**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARLES RICE | : | |
| | : | |
| Appellant | : | No. 1709 EDA 2019 |

Appeal from the PCRA Order Entered May 30, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013974-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARLES RICE | : | |
| | : | |
| Appellant | : | No. 1791 EDA 2019 |

Appeal from the PCRA Order Entered May 30, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013976-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARLES RICE | : | |
| | : | |
| Appellant | : | No. 1792 EDA 2019 |

Appeal from the PCRA Order Entered May 30, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013978-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

|                |   :   |                |
|----------------|-------|----------------|
| v.             |   :   |                |
|                |   :   |                |
|                |   :   |                |
| CHARLES RICE   |   :   |                |
|                |   :   |                |
| Appellant      |   :   | No. 1793 EDA 2019 |

Appeal from the PCRA Order Entered May 30, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013980-2011

BEFORE: BENDER, P.J.E., OLSON, J., and STRASSBURGER, J.*

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: JUNE 7, 2021**

Appellant, Charles Rice, appeals from the order dismissing his timely petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

The PCRA court summarized the facts and procedural history of this case as follows:

> On September 3, 2011, [Appellant] was shot in the leg and abdomen while riding his bike. Khalief Ladson was a person of interest in that shooting. [Appellant] and Mr. Ladson were both seventeen (17) years old and[,] prior to this shooting incident[,] had been friends. On September 25, 2011[,] at 9:30 P.M[.], Latice Johnson, Mr. Ladson's mother, was sitting on the front steps of her mother's home in South Philadelphia with her seven children—including Mr. Ladson—as well as several nieces and nephews. Two men approached and began shooting at the family. Ms. Johnson and three others suffered multiple gunshot wounds. Ultimately[,] the victims were treated for their injuries and survived.
>
> At the scene, Ms. Johnson described the shooters as two men, one in a gray[-]hooded sweatshirt and black sweatpants and the other in a black[-]hooded sweatshirt and black sweatpants. Mr. Ladson

---

\* Retired Senior Judge assigned to the Superior Court.

- 2 -

described the shooters as two or three black males in dark hoodies. A third adult victim, Latoya Lane, gave a description of the shooters as two or three black males.

On September 26, 2011, the day following the shooting, a detective showed Ms. Lane and Ms. Johnson a photo array containing a photo of [Appellant] and seven others. Ms. Johnson identified [Appellant] as one of the shooters. Officers obtained an arrest warrant for [Appellant] and on September 27, 2011[,] [Appellant] turned himself into police. [Appellant] was represented at this stage of proceedings by Sanjay Weaver, Esq.

On February 8, 2013, [Appellant] was found guilty of four counts each of Attempted Homicide and Conspiracy to Commit Aggravated Assault, three counts each of Aggravated Assault and Conspiracy to Commit Homicide, and one count each of Firearms Not to Be Carried Without a License, Carrying a Firearm in Public in Philadelphia, and Possession of a Firearm by a Minor.[1] On May 24, 2013, this [c]ourt sentenced [Appellant] to an aggregate [term] of thirty to sixty years['] incarceration.

On June 2, 2013[,] [Appellant] filed a Post-Sentence Motion requesting that this [c]ourt reconsider [his] sentence. Said Motion was denied by operation of law on October 2, 2013. On October 25, 2013[, Appellant] filed an appeal to the Superior Court. … On January 20, 2016[,] the Superior Court … affirmed the decision of the trial court. [**Commonwealth v. Rice**, 136 A.3d 1033 (Pa. Super. 2016) (unpublished memorandum).[2]]

On February 23, 2016[, Appellant] filed a PCRA Petition, bringing several claims of ineffective assistance of counsel. Subsequently, counsel was appointed and filed a PCRA Petition reiterating [Appellant]'s arguments pertaining to ineffective assistance of counsel and asking this [c]ourt to vacate [Appellant]'s conviction and sentence.

On January 25, 2019, this [c]ourt held an evidentiary hearing as to five issues: 1. Failure to Pursue Decertification; 2. Failure to Discuss or Pursue a Plea Offer; 3. Failure to Request a **Kloiber**[3]

---

[1] Respectively, 18 Pa.C.S. §§ 901, 903, 2702, 903, 6106, 6108, and 6110.1.

[2] Appellant did not seek further review by our Supreme Court.

[3] **See Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954).

Instruction; 4. Preparation of Expert Witness Dr. Theodore Tapper; [and] 5. Trial Counsel's Elicitation of Prejudicial Testimony Linking [Appellant] to Criminal and Gang Activity. At this hearing, [Appellant] testified, along with Dr. Tapper, and Dr. Murray Cohen, [Appellant]'s surgeon. After considering the evidence presented at this evidentiary hearing, this [c]ourt denied [Appellant]'s PCRA Petition on May 30, 2019.

On June 11, 2019, [Appellant] filed a Notice of Appeal with the Superior Court. This [c]ourt issued a [Pa.R.A.P.] 1925(b) Order on June 19, 2019, and [Appellant] filed his [Rule 1925(b) Statement] on July 23, 2019. On August 14, 2019, this [c]ourt granted [Appellant]'s Motion for an Extension of Time to file an Amended Statement of Matters Complained of on Appeal. On September 13, 2019, [Appellant] filed []his Amended [Rule 1925(b) Statement].

PCRA Court Opinion ("PCO"), 12/19/19, at 1-4 (footnotes omitted).

Appellant now presents the following question for our review: "Was Appellant's conviction a result of trial counsel's ineffective assistance of counsel, which so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place?" Appellant's Brief at 5. More specifically, Appellant argues that his trial

counsel was ineffective due to inadequate preparation for trial and for the presentation of Appellant's defense at trial. The sum of these deficiencies … meant that the jury could not have made an accurate determination of [Appellant]'s guilt or innocence. In **Commonwealth v. Perry**, … 644 A.2d 705 ([Pa.] 1994), trial counsel was deemed ineffective due to his general unpreparedness for trial. In the instant case, trial counsel's omissions and failures to adequately prepare this case cannot in any way be described as trial strategy. No reasonable explanation can be offered for counsel's virtual abandonment of her client prior to tr[ia]l. Trial counsel's aggregate deficiencies, as presented in the pleadings and evidentiary hearing, constitute ineffective assistance of counsel, requiring that Appellant be provided a new trial.

Appellant's Brief at 41.

- 4 -

We review ineffective assistance of counsel ("IAC") claims under the following standards.

[I]n order to obtain relief based on [an IAC] claim, a petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) [the] petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

*Commonwealth v. Reed*, 971 A.2d 1216, 1221 (Pa. 2005) (citing *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). We presume that counsel was effective and, therefore, a petitioner bears the burden of pleading and proving each of the three factors by a preponderance of the evidence. *Commonwealth v. Rathfon*, 899 A.2d 365, 369 (Pa. Super. 2006). "Failure to prove any prong of this test will defeat an ineffectiveness claim." *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014).

In his Rule 1925(b) statement, Appellant argued that trial counsel was ineffective due to a general lack of preparation. *See* Amended Pa.R.A.P. Rule 1925(b) Statement, 9/13/19, at 2 ¶¶ 2-3 (unnumbered pages). He also asserted the following individual IAC claims:

a. Trial counsel had minimal contact with [Appellant], who was a minor/juvenile, prior to and during trial.

b. Trial counsel failed to obtain and review complete discovery with [Appellant] to adequately prepare for trial.

c. Trial counsel failed to discuss or explore decertification of the case to Family Court.

d. Trial counsel failed to discuss or explore possible non-trial dispositions of the case with [her] juvenile client, who was in criminal/adult court for the first time.

- 5 -

e. Trial counsel failed to adequately cross-examine or present rebuttal to the sole identification witness offered by the Commonwealth[,] either by calling available police witnesses or offering documents and other evidence that contradicted the identification testimony.

f. Trial counsel failed to request a cautionary instruction to be read to the jury regarding the identification testimony.

g. Trial counsel failed to interview, prepare, or examine … Dr. Theodore Tapper (a pediatrician). Trial counsel failed to present relevant medical records to this witness for review or to the jury. Through this lack of preparation, trial counsel also failed to realize that Dr. Tapper was not an expert in the relevant area of medicine, and that trial counsel should have presented a trauma expert to independently evaluate offer conclusions regarding Dr. Tapper's observations.

h. Trial counsel failed to investigate or prepare the alibi defense presented to the jury. As a result, trial counsel unwittingly presented a conflicting alibi that was contradicted by other witnesses and evidence.

i. Trial counsel implicated her own client in gang activity during trial. Testimony linking [Appellant] to a gang was directly elicited by trial counsel's line of questioning. Further, trial counsel … prejudiced her client by highlighting this testimony—through an untimely and misplaced objection and sidebar—and subsequently failing to request a curative instruction.

*Id.* at 2-4 ¶ 4 (unnumbered pages). Appellant also argued that the PCRA court erred when it limited the scope of the January 25, 2019 evidentiary hearing to the five issues detailed above. *Id.* at 4 ¶ 5; *see also* PCO at 3.

In his brief, however, Appellant inexplicably presents this Court with a single, complex IAC claim, referencing the numerous, individual IAC claims raised in his Rule 1925(b) statement in a single narrative that spans the entire argument portion of his brief, disregarding our Rules of Appellate Procedure. *See* Pa.R.A.P 2119(a) ("The argument shall be divided into as many parts as

there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). This has generally hindered our review of the individual IAC claims that were raised in Appellant's amended Rule 1925(b) statement, as the PCRA court concluded that, because Appellant ostensibly failed to prove any individual instance of the ineffectiveness of trial counsel, his claim that counsel was generally ineffective for lack of preparation was meritless. *See* PCO at 17.

Moreover, Appellant does not present those individual IAC claims for our review in his Statement of the Questions Presented and, thus, he has effectively abandoned them.[4] For the same reason, we conclude that his claim that the PCRA court erred by limiting the scope of the PCRA hearing has also been abandoned. However, Appellant has preserved his claim that trial counsel was ineffective due to a general lack of preparation, so, out of an abundance of caution, we will address the merits of that claim, which necessarily involves the individual claims of ineffectiveness, despite these numerous deficiencies in Appellant's brief.

**I**

---

[4] *See* Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. *No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby*.") (emphasis added).

The PCRA court first considered Appellant's allegations that trial counsel had only minimal contact with him prior to trial and had failed to discuss trial strategy with him. The court rejected these claims as lacking arguable merit because Appellant

> stated at the [PCRA] hearing that he met with counsel three times in person and spoke with her three times on the phone before trial[.] N.T., 1/25/19, at 29-31. He also said that counsel explained that her strategy would be to attempt to discredit the eyewitness, Ms. Johnson, and that they had discussed his alibi defense—which she presented at trial—when [Appellant] turned himself in[.] **Id.** at 16, 31-33. Clearly, there were discussions of strategy. Further, the docket indicates that an offer was "conveyed and will remain open until trial" on December 13, 2012, disproving [Appellant]'s claim that no offer was conveyed. Moreover, [Appellant] stated on the record at trial that he was satisfied with counsel[.] N.T.[,] 2/4/13, at 164.

PCO at 6 (citations reformatted). Appellant does not specifically address this analysis in the argument section of his brief. Thus, he has failed to convince us that these claims were of arguable merit.

## II

Second, the PCRA court considered Appellant's claims that trial counsel was ineffective for failing to seek decertification of the case to juvenile court, or even discuss that matter with Appellant. The court determined:

> This issue is without merit, as [Appellant] did not suffer prejudice through counsel's inaction. When a case involving a juvenile defendant goes directly to the criminal division, the juvenile can request treatment within the juvenile system through a transfer process called decertification. **Commonwealth v. Thomas**, 67 A.3d 838, 842 (Pa. Super. []2013). A juvenile may obtain decertification if the transfer to the juvenile court system serves the public interest. **Id.** Factors to be considered are (1) the impact of the offense on the victims; (2) the impact of the offense

on the community; (3) the threat of the safety to the public posed by the juvenile; (4) the nature and circumstances of the offense; (5) the degree of the child's cu[l]pability; (6) the adequacy and duration of dispositional alternatives; [and] (7) whether the child is amenable to treatment, supervision, or rehabilitation. *Id.* The juvenile bears the burden of proof by a preponderance of the evidence. *Id.* Whether to grant decertification is within the discretion of the trial court. *Id.*

Whether counsel had any reasonable basis for her failure to file this Motion, the record is silent on this. At the January 25, 2019 evidentiary hearing, [Appellant] failed to present testimony as to this issue.

As stated above, [Appellant] was not prejudiced by counsel's decision not to file this Motion. [Appellant] has failed to provide much detailed information as to what facts would have warranted decertification. [Appellant] has stated that at the time of the underlying crime, he was in the process of joining the Army and had signed up for his SAT's. At the same time, looking to the nature and circumstances of the offense, the charges here are quite serious. [Appellant] opened fire on a family that included several very young children, suggesting a very serious danger to the community. Even though the injuries caused were solely to the victims['] lower extremities, such injuries could have been fatal. This incident was connected to gang activity and served as a retaliation for a prior shooting allegedly perpetrated by one of the victims, suggesting [Appellant] was involved in groups of individuals that pose a great danger to the community. Taken as a whole, this set of circumstances would not have warranted decertification, even if [Appellant]'s counsel had raised the issue. As such, this issue is without merit, and must fail.

PCO at 6-8.

Again, Appellant fails to present any argument in his brief as to why decertification was warranted under the circumstances of this case and, thus, he fails to establish the claim has arguable merit. We further ascertain no error in the PCRA court's determination that Appellant was not prejudiced by

trial counsel's failure to seek decertification, or by her failure to discuss the issue with him.

# III

Third, the PCRA court examined Appellant's IAC claims concerning trial counsel's preparation for, and execution of, her cross-examination of Ms. Johnson, specifically with regard to her identification of Appellant. The PCRA court construed these claims as an attempt to relitigate Appellant's direct appeal:

> [Appellant] is seeking to re-litigate claims which this [c]ourt has previously addressed in its[] December 23, 2014 opinion, and which the Superior Court declined to overturn on appeal. This [c]ourt held, and the Superior Court affirmed, that the Commonwealth, through Ms. Johnson's testimony, presented sufficient evidence for a jury to convict [Appellant]. In this [c]ourt's December 23, 2014 opinion, this [c]ourt noted that Ms. Johnson unequivocally identified [Appellant] at trial as one of the shooters in this case. Despite extensive cross-examination, Ms. Johnson never wavered. Ms. Johnson testified that she watched [Appellant] walk close to her (twenty feet away), that [Appellant]'s face was fully visible because he was standing near streetlights, that she stared at [Appellant]'s fully visible face when he started shooting, and that she noticed that [Appellant] had braided hair. Additionally, the day after the shooting, Ms. Johnson, without hesitation, unequivocally identified [Appellant] as the shooter in a photo array of eight individuals. This identification was corroborated by the fact that numerous witnesses testified that [Appellant] had braided hair at, or near, the time of the shooting, and that all of the other interviewed victims in the shooting indicated that the shooters were dark males. As [Appellant] did not prove that Ms. Johnson's testimony was inaccurate, his claims concerning trial counsel's ineffectiveness in failing to adequately challenge this evidence at trial and in the arrest warrant must fail.

*Id.* at 8-9 (citation omitted).

- 10 -

Initially, the PCRA court is simply incorrect in its conclusion that these claims were previously litigated. On direct appeal, Appellant raised sufficiency and weight-of-the-evidence claims regarding his identification by Ms. Johnson. He did not raise any IAC claim pertaining to trial counsel's cross-examination of Ms. Johnson, or counsel's preparation to confront her testimony, which were presented for the first time in Appellant's PCRA petition. Appellant does not now claim that the evidence was insufficient, or that the weight-of-the-evidence was against the verdict. Rather, he claims he was prejudiced by counsel's ostensibly inadequate preparation for, and cross-examination of, Ms. Johnson's identification testimony. While these claims are not completely unrelated, they are legally distinct.[5]

Appellant asserts that:

The PCRA court, in denying Appellant's petition, failed to develop a specific comparison of the evidence presented at trial to the evidence presented throughout PCRA proceedings in this matter. Specifically, since the evidence presented during the PCRA proceedings demonstrated that Ms. Johnson's ability to observe was fundamentally flawed and, at best, incorrect, it is reasonably probable that at least one juror would have decided that the

_____

[5] For instance, on direct appeal, Appellant's sufficiency and weight claims only encompassed consideration of evidence actually admitted at trial. However, under the rubric of an IAC claim, Appellant can posit that certain evidence, omitted from the jury's consideration due to counsel's ostensible ineffectiveness, undermined the fairness of his trial. Even if the jury was permitted to render a guilty verdict based on the evidence presented at trial, Appellant now presents a distinct legal claim that, had counsel provide effective assistance, additional evidence would have been considered by the jury that might have persuaded a juror to reach a different conclusion. This is clearly a distinct legal claim that was not previously litigated on direct appeal.

Commonwealth had failed to meet [its] burden at trial, thereby satisfying the prejudice requirement….

Appellant's Brief at 28-29.

Appellant contends that trial counsel provided ineffective assistance based on the following inaccuracies in Ms. Johnson's identification testimony, which he asserts were established through further investigation: 1) Ms. Johnson claimed that she was about 20 feet away from Appellant when she saw him, when it was more likely to be three times that distance; *see id.* at 30; 2) Ms. Johnson claimed her ability to see Appellant's face was aided by a streetlight, but no streetlight was located near the scene of the crime; *id.*; 3) Ms. Johnson's line of sight was impeded by two vehicles according to the Commonwealth's own diagram of the scene; *id.* at 31; and that 4) despite knowing Appellant, she did not identify him by name until the day after the shooting and, initially, only gave a general description of the perpetrator, *id.* at 31-33.  Appellant argues that, had counsel adequately prepared for trial, she could have exploited these discrepancies to undermine the credibility of Ms. Johnson's identification of Appellant with at least one juror.

While the PCRA erred in determining this issue was previously litigated, we nevertheless conclude that Appellant has not met his burden to demonstrate that he suffered outcome-determinative prejudice due to counsel errors.  *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) ("This Court may affirm a PCRA court's decision on any grounds if the record supports it.").  The PCRA provides a remedy only where IAC "so undermined the truth-determining process that no reliable adjudication of guilt or

innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). Here, the question is whether trial counsel's investigation was so deficient as to deprive Appellant of a fair trial with respect to Ms. Johnson's identifying him as the shooter. Although Appellant has now pointed out several additional ways that trial counsel could have challenged her testimony through further investigation, we are not convinced that counsel's failure to do so resulted in outcome-determinative prejudice.

As noted by the Commonwealth, Ms. Johnson was extensively cross-examined at trial. ***See*** N.T., 1/31/13, at 70-109. First, with respect to the poor estimate of 20 feet between Ms. Johnson and Appellant at the time of the shooting, we do not believe this detail, corrected to an estimate of 60 feet, would have had a significant effect at trial. Trial counsel questioned Ms. Johnson about her vantage point compared to the assailants, with reference to aerial photos of the scene. ***Id.*** at 75-77. Thus, regardless of whether the estimate of 20 feet was accurate, the jury was made aware of the relative positions of the victims and assailants as the assault occurred.

Moreover, it was not Ms. Johnson's estimate of distance in the first instance. The prosecutor asked if she was about 20 feet away, and she agreed that estimate was approximately correct. ***Id.*** at 52. Nevertheless, the jury was aware that the estimate was for the distance from the porch where Ms.

Johnson was sitting to the curb *across the street*, which, common sense dictates, was likely to be a distance greater than 20 feet. While the distance may have been closer to 60 feet as Appellant claims, the jury was aware of the relative distance between Ms. Johnson and Appellant through her testimony, and by reference to the trial exhibits of the scene, despite the poor estimate offered by the prosecutor. Moreover, we do not believe the longer distance was so great that it made it impossible, or even unlikely, for Ms. Johnson to be able to identify Appellant.

We also attach little significance to Appellant's assertion that Ms. Johnson was incorrect about the lighting on the street. Ms. Johnson was questioned about the lighting on the street in front of her home, and she ultimately admitted, upon cross-examination by trial counsel, that the nearest streetlights were located down the street from her home, by a school. *Id.* at 79.

Appellant also asserts that Ms. Johnson's view of him must have been obstructed by two vehicles, but this ignores the fact that Ms. Johnson never claimed that the assailants were stationary during the entire encounter. She testified that she first observed Appellant and his cohort turn a corner, and then walk down the street toward her home before they started shooting as they reached the curb across the street. Furthermore, Ms. Johnson recognized Appellant's face, not his lower body. It is not at all obvious that the presence of a vehicle between Ms. Johnson and Appellant would have hindered her

ability to identify Appellant by his face, even if the rest of his body was obstructed.

Finally, Appellant insists that it was suspicious that Ms. Johnson did not immediately identify him by name—despite claiming to have known him for many years—and that trial counsel failed to adequately develop this as a challenge to Ms. Johnson's credibility. We disagree. Trial counsel extensively cross-examined Ms. Johnson about deficiencies in her initial description of the assailants. *Id.* at 85-92. Trial counsel also specifically asked Ms. Johnson if she had initially identified Appellant by name, but Ms. Johnson did not remember. *Id.* at 89. Counsel also asked Ms. Johnson when was the last time she had seen Appellant before the shooting, but she could also not recall that information. *Id.* at 90.

Importantly, the fact that Ms. Johnson did not immediately identify Appellant by name was known to the jury; it was fairly suggested by the fact that she did not recall if she had when directly questioned, and the only evidence of her initial identification of Appellant occurred the following day at a hospital. The shooting occurred around 9:30 p.m. on September 25, 2011. Ms. Johnson testified that, in the immediate aftermath of the shooting, she was in and out of hospitals, for her own care, and for the care of her family members who were also injured. The very next day, at 6 p.m., less than 24 hours later, Ms. Johnson identified Appellant from a photo array when interviewed by detectives. *Id.* at 62-64. Because the jury was aware of these facts, we do not believe any additional focus by trial counsel on the

delay in identifying Appellant would have had an impact on their view of Ms. Johnson's credibility in identifying Appellant.

In sum, Appellant has simply failed to meet his burden to prove that any of the alleged deficiencies in trial counsel's cross-examination of Ms. Johnson, or the sum of those deficiencies, resulted in prejudice to the extent that it deprived him of a fair trial. While counsel's cross-examination was not perfect, and can be easily second-guessed in hindsight, Appellant was not entitled to flawless representation, and he has failed to show that trial counsel's performance was constitutionally defective.

**IV**

Fourth, the PCRA court considered Appellant's IAC claim that his trial counsel should have requested a ***Kloiber*** instruction. The court initially found that this claim had essentially been previously litigated on direct appeal. PCO at 9. We disagree. In Appellant's supplemental Rule 1925(b) statement, filed during the litigation of his direct appeal, he asserted that the trial court erred by not issuing a ***Kloiber*** instruction "as requested[.]" ***See*** Appellant's Rule 1925(b) statement, 2/2/14, at 1 ¶ 1. The trial court determined that counsel had not requested a ***Kloiber*** instruction, ***see*** Trial Court Opinion, 12/23/14, at 20, and Appellant subsequently abandoned that claim in his arguments before this Court on direct appeal. Appellant now asserts that a ***Kloiber*** charge should have been requested. This claim was not previously litigated.

Nevertheless, we conclude that this claim lacks arguable merit because Appellant has failed to demonstrate that the instruction was warranted in the circumstances of this case.

> A **Kloiber** charge is appropriate where there are special identification concerns: a witness did not have the opportunity to clearly view the defendant, equivocated in his identification of a defendant, or had difficulty making an identification in the past. **Commonwealth v. Rollins**, … 738 A.2d 435, 448 n.14 ([Pa.] 1999); **Commonwealth v. Gibson**, … 688 A.2d 1152, 1163 ([Pa.] 1997).  However, "[w]hen the witness already knows the defendant, this prior familiarity creates an independent basis for the witness's in-court identification of the defendant and weakens ineffectiveness claims based on counsel['s] failure to seek a **Kloiber** instruction." **Commonwealth v. Ali**, … 10 A.3d 282, 303 ([Pa.] 2010) (citations omitted).

**Commonwealth v. Reid**, 99 A.3d 427, 448 (Pa. 2014).

Here, as discussed above, Ms. Johnson had a clear opportunity to view Appellant's face from a distance of, at most, 60 feet, and she never wavered in her identification.  She never equivocated, nor did she have any difficulty making the identification on a prior occasion.  Moreover, Ms. Johnson knew Appellant previously.  Thus, we conclude that a **Kloiber** instruction was not warranted, and, therefore, there is no arguable merit to Appellant's claim that counsel was ineffective for failing to request a **Kloiber** instruction.

**V**

Next, the PCRA court considered Appellant's IAC claim that trial counsel failed to adequately prepare Dr. Tapper for trial.  Appellant asserts that trial counsel failed to elicit testimony from Dr. Tapper regarding the severity of Appellant's injuries at the time of the shooting.  **See** Appellant's Brief at 37.

At trial, Dr. Tapper explained the extent of Appellant's wounds from the shooting that occurred while on his bicycle, and the resulting medical care provided, as follows:

> He was shot several times. One of the bullets went into his butt, one of the bullets went into his thigh, one of the bullets went into his belly, his abdomen.
>
> …
>
> When he got to Jefferson Hospital emergency room, they assessed the situation fairly quickly and they took him to the operating room fairly quickly. And they did an exploratory surgery.
>
> They opened him up from basically right below his breastbone all the way down to his pelvis where the incision went straight up and down the body for 10 inches[,] and using proper surgical technique[,] stuck their hands in there trying to find out where the bullet was. And they eventually found it. The bullet had penetrated -- had gone into his small intestine, large intestine, stomach.
>
> What damage had the bullet done? Fortunately, they found that that bullet had not done any damage to the small intestine [or] large intestine. But there was a bullet in there, and they had to grope around in there and move intestines this way and that.
>
> And they finally got the bullet, and they took it out, saved it, and then put everything back in place, and sewed him up.
>
> But they didn't sew him up, they put metal staples in place to close him up. So the staples put the sides of his abdomen together in place. So that when the wound healed, it would heal like this rather than like that.

N.T., 2/4/13, at 13-14.

Appellant argues that trial counsel should have asked Dr. Tapper what would have happened to the staples that bound Appellant's wound if Appellant had been running as described by Ms. Johnson. At the PCRA hearing, Dr. Tapper testified that he would have answered that question as follows:

[I]t would have been virtually impossible for [Appellant] to be running, let alone walking with any speed down the street, whatever street. He certainty wasn't doing it on the day I saw him, and he wouldn't have been doing it for a week or two or five from that point on because he was severely debilitated and incapacitated with his ability to walk when he was in my office.

***

However, had he taken lots of opioids at some point at whatever day, and had he been running, the incision line where the surgeons had opened him up from breastbone to way down eight or nine inches below the breastbone, straight up and [down] the abdomen, that incision probably would have split open to one degree or another and intestines would have been coming out or blood would have been coming out or fluid coming out, if he had been able to run, which I don't think he would have been able to do in the first place.

N.T., 1/25/19, at 56-58. Appellant argues that he was prejudiced by trial counsel's failure to elicit this testimony from Dr. Tapper at trial. This claim lacks arguable merit.

Dr. Tapper testified extensively at trial regarding Appellant's injuries. *See* N.T., 2/4/13, at 7-43. He specifically described the surgical incision to Appellant's abdomen, and the fact that it had been bound with staples instead of stitches. *Id.* at 14. He testified that he saw Appellant nine days after his release from the hospital, where Appellant had been for eight days after he was shot, a visit that occurred just five days prior to the at-issue shooting. *Id.* at 15. Dr. Tapper stated that, during the visit, Appellant exhibited "a moderate amount" of pain, and that it was obvious that Appellant's pain was being triggered by his movement. *Id.* at 17-19. Dr. Tapper ultimately opined that the "amount of pain that I saw him [in,] and [his] inability to stand and get onto and off the table in my office on the 20th of September[,] makes me

very dubious as to whether he could walk standing up straight, let alone run with any degree of speed five days after I saw him." ***Id.*** at 22.

The PCRA court determined that this claim lacked arguable merit, essentially rejecting Dr. Tapper's PCRA hearing testimony as not credible, stating:

> [A]t trial, Dr. Tapper was asked clearly whether [Appellant] could have run and why his condition would affect that ability. Dr. Tapper had every opportunity to explain his conclusions, and he did so, referring to [Appellant]'s level of pain. If he wanted to opine that it was actually impossible for [Appellant] to run, he would have known that at the time, and could have said so in answering any of those questions. At the evidentiary hearing, Dr. Tapper eventually backtracked, again admitting that it was not "impossible" for [Appellant] to run, but rather "virtually impossible[.]" []N.T.[,] 1/25/19, 56-57, 73-74[].

PCO at 11.

We ascertain no error by the PCRA court, as the record supports its credibility assessment of Dr. Tapper. ***See Commonwealth v. Abu-Jamal***, 720 A.2d 79, 99 (Pa. 1998) ("Just as with any other credibility determination, where the record supports the PCRA court's credibility determinations, those determinations are binding on this [C]ourt."). Accordingly, this IAC claim lacks arguable merit.[6]

**VI**

---

[6] The PCRA court also determined that Appellant was not prejudiced by counsel's failure to elicit this additional testimony from Dr. Tapper. We do not reach this question. "If an appellant fails to prove by a preponderance of the evidence any of the … prongs [of the IAC test], the Court need not address the remaining prongs of the test." ***Commonwealth v. Fitzgerald***, 979 A.2d 908, 911 (Pa. Super. 2009).

Next, the PCRA court considered Appellant's claim that trial counsel was ineffective for providing conflicting alibi witness testimony to the jury. The entirety of his argument regarding this IAC claim is as follows:

> It is clear from the trial record that counsel was ineffective relating to [her] investigation and presentation of the alibi defense. In failing to adequately prepare an alibi defense—*i.e.*, where defense counsel unwittingly offers alibi evidence that contradicts itself-trials counsel's actions have been found to constitute ineffective assistance of counsel. ***Commonwealth v. Johnson***, 966 A.2d 523 (Pa. Super. 2009).

> [T]rial counsel offered two alibi witnesses: Ms. Deania Duncan, [Appellant's] godmother, and Ms. Duncan's son, Q.M., age sixteen (16). The two alibi witnesses contradicted one another regarding numerous key facts. In fact, the PCRA [c]ourt actually acknowledges that counsel put on a conflicting alibi defense. [PCO] … [at] 13.

Appellant's Brief at 37-38.

Appellant fails to adequately develop any discussion of why counsel's presentation of alibi witnesses at trial was clearly prejudicial to an extent that he was deprived of a fair trial. Critically, Appellant fails to discuss what alternative strategies might have resulted in a different verdict. For instance, he does not explain whether counsel should have chosen to not present any alibi witnesses, or only one of the two conflicting alibi witnesses, or how or why such a strategy would have led to a different result.

Furthermore, Appellant also provides no discussion pertaining to his citation of ***Johnson***. In that case, the Commonwealth appealed after the PCRA court granted a new trial based on Johnson's claim(s) that his trial counsel was ineffective. Johnson asserted that his trial counsel had failed to

adequately prepare alibi witnesses, and had also failed to call three potential alibi witnesses.

*Johnson* is distinguishable from the instant matter in several respects. First, the *Johnson* decision had a different procedural posture, as the Commonwealth had appealed a ruling favorable to Johnson in the PCRA court. Second, even assuming the arguable merit of Appellant's claim, the potential prejudice that ensued in *Johnson* was substantially greater. In that case, both alibi witnesses who testified that Johnson was with them on the date he was accused of murdering the victim mistakenly testified that the date in question fell on a Wednesday, when the murder had occurred on a Tuesday. *Johnson*, 966 A.2d at 526. Additionally, Johnson presented three additional alibi witnesses at his PCRA hearing who had not been interviewed by Johnson's trial counsel, and who, therefore, did not testify at Johnson's trial. *Id.* at 527. Moreover, at the hearing, Johnson also presented one of the Commonwealth's key witnesses, who recanted his identification of Johnson. *Id.*

As the *Johnson* Court stated: "To properly grant *Strickland* relief here, the PCRA court would have to find that the uncalled fact witnesses and the deficiently prepared alibi witness had relevant evidence that could have aided [Johnson]'s defense, and that there is a reasonable probability that the introduction of such evidence would have altered the outcome of the trial." *Id.* at 540. Because the PCRA court failed to make any credibility determinations regarding the new alibi witnesses, as would be necessary to

demonstrate that counsel's errors were outcome determinative, the **Johnson** Court remanded for further proceedings. **Id.** at 540-41.

In the instant case, Appellant did not proffer alternative alibi witnesses in his PCRA petition, nor has he demonstrated that the result of his trial would have been different if fewer alibi witnesses had been presented at his trial, or if they would have been better prepared to testify. Furthermore, unlike what occurred in **Johnson**, the primary identification witness here, Ms. Johnson, has not recanted her identification of Appellant. Accordingly, we conclude that **Johnson** is distinguishable, and does not entitle Appellant to relief. Thus, we ascertain no error in the PCRA court's rejection of this IAC claim.[7]

## VII

Next, the PCRA court addressed Appellant's claim that trial counsel was ineffective for soliciting prejudicial testimony from Officer Donna Simmons. The entirety of Appellant's argument in this regard is as follows:

> Trial counsel, during her cross-examination of Officer Simmons, elicited extremely prejudicial information that [Appellant]'s picture, prior to the officer's interaction with [him] on September 19, 2011, was displayed in the officer's police district as someone associated with '7th Street and 5th Street' gang. This evidence was the same evidence that the PCRA court prevented the Commonwealth from introducing in pretrial motions. This was due to its unsubstantiated and inflammatory nature, which the PCRA court ruled was unduly prejudicial at the time. However, trial counsel not only elicited this evidence before the jury, she then

---

[7] To be clear, we discern no error in the PCRA court's conclusion that Appellant was not unduly prejudiced by the presentation of the conflicting testimonies of Ms. Duncan and Q.M. to the extent that a new trial is warranted. However, we reject the PCRA court's alternative conclusion that this claim was previously litigated on direct appeal.

lodged an objection following her own question, and then requested a recess, further highlighting this inflammatory testimony.

Appellant's Brief at 38-39.

The PCRA court found this claim to be meritless, reasoning as follows:

Prior to trial the parties agreed that such information would be inadmissible at trial, but at trial[,] [Appellant]'s counsel elicited testimony from Officer … Simmons, in a reference to a picture of [Appellant] at the police station. When asked repeatedly by [Appellant]'s [t]rial [c]ounsel whether she knew [Appellant], Officer Simmons stated that she did not know his name, but she knew who he was because[:] "Back in our district we have pictures of gentlemen from 7th Street and 5th Street." []N.T.[,] 2/5/13, at 22[]. This picture was how the [o]fficer was familiar with [Appellant]. [Appellant] argues that this testimony was prejudicial to him. [Appellant] has not proven that he was prejudiced by this information being introduced at trial. Officer Simmons did not actually say that [Appellant] was a gang member; she only referred to his picture in passing. A jury would not have deduced that he must be a gang member from that vague testimony, which does not use the word "gang" at any point. [Appellant] simply opines that it painted him in a negative light to the jury. In its [prior] opinion, this [c]ourt found that this testimony "did not have the effect of prejudicing the jury," as it would not have implied any gang affiliation to a layperson. []Trial Court Opinion, 12/23/14, [at] 27[]. Thus, [Appellant] has clearly not proven that this insignificant detail affected the outcome of the trial[.] *See Commonwealth v. Albrecht*, 720 A.2d 693, 701 (Pa. 1998) ("If it is clear that [the a]ppellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone[.]"). Thus, this claim is without merit.

PCO at 14-15.

We agree with the PCRA court, and Appellant's scant argument is unresponsive to the PCRA court's reasoning for rejecting this claim. Accordingly, we assess no error in the PCRA court's rejection of this claim as lacking merit.

**VIII**

The PCRA court next considered Appellant's claim that it should have granted an evidentiary hearing regarding several of the IAC issues raised in his petition. "With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." **Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015).

Initially, we reject the court's conclusion, as discussed above, that some of Appellant's IAC claims have been previously litigated on direct appeal, which the court asserts as the primary basis for denying an evidentiary hearing on certain claims set forth in Appellant's amended petition. **See** PCO at 16. Nevertheless, Appellant fails to convince us that he was prejudiced by the court's failure to hold a hearing.

The PCRA court refused to hold a hearing on Appellant's claims that his trial attorney was ineffective for 1) failing to effectively challenge Ms. Johnson's identification testimony, and 2) failing to adequately develop Appellant's alibi defense. **See** PCO at 15-16. As discussed, *supra*, we are able to determine that these claims were meritless without the benefit of an evidentiary hearing, and this "Court may affirm a PCRA court's decision on any grounds if the record supports it." **Ford**, 44 A.3d at 1194.

In any event, Appellant concedes that at "the PCRA evidentiary hearing held on January 25, 2019, it was stipulated by the parties that Appellant's trial

counsel was unavailable for the hearing due to physical and mental-health related reasons—she was incompetent." Appellant's Brief at 21. Thus, trial counsel was not available to testify, even had the PCRA court permitted Appellant to raise those two claims at the hearing. Furthermore, Appellant fails in his brief to identify or discuss what evidence and/or witnesses he intended to present to support these claims at the PCRA hearing, had the court not limited its scope. Accordingly, we have no basis upon which to determine if Appellant was prejudiced by the denial of an evidentiary hearing. For all these reasons, we conclude that Appellant has failed to demonstrate he was prejudiced by the PCRA court's limitations of the scope of the evidentiary hearing, even if the explicit reasons cited by the PCRA court for doing so were erroneous. "Appellant cannot show an abuse of discretion if he fails to show how he was prejudiced by the decision." ***Commonwealth v. Ogrod***, 839 A.2d 294, 323 (Pa. 2003).

**IX**

Finally, the PCRA court considered Appellant's claim that "there is a reasonable probability that the jury's guilty verdicts were a result of trial counsel's cumulative errors." PCO at 17. The court concluded that, because it failed to find merit to any individual IAC claim, Appellant was not entitled to relief on his claim that the cumulative errors of counsel deprived him of a fair trial.

Our Supreme Court has discussed the standard for the assessment of a claim concerning the cumulative errors of counsel as follows:

> We have often held that "no number of failed [IAC] claims may collectively warrant relief if they fail to do so individually." **Johnson**, **supra** at 532 (quoting **Commonwealth v. Washington**, … 927 A.2d 586, 617 ([Pa.] 2007)).  However, we have clarified that this principle applies to claims that fail because of lack of merit or arguable merit.  When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed. … **Johnson**, **supra** at 532 (citing **Commonwealth v. Perry**, … 644 A.2d 705, 709 ([Pa.] 1994), for the principle that a new trial may be awarded due to cumulative prejudice accrued through multiple instances of trial counsel's ineffective representation).

**Commonwealth v. Spotz**, 18 A.3d 244, 321 (Pa. 2011) (some citations omitted).

Here, the only individual IAC claims that we have rejected solely based on lack of prejudice were regarding counsel's ostensible failure to prepare for the cross-examination of Ms. Johnson, and counsel's presentation of somewhat conflicting alibi witness testimony.  We do not find that the cumulative prejudice of these errors was so significant as to affect the outcome of Appellant's trial.  Although both errors arguably touched upon the same underlying issue of identification, Appellant has failed to demonstrate that either error (or set of errors) was so significant, even in combination, to undermine the weight afforded by the jury to Ms. Johnson's identification testimony.  Accordingly, no relief is due.

Order **affirmed**.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/21